IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 19–cv–02932–CMA–KMT

MANSOOR SHAFI,

    Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

    Defendant.

---

**ORDER**

---

This matter is before the court on "Plaintiff's Motion to Exclude or in the Alternative for Costs," filed on July 13, 2020. [("Motion"], Doc. No. 33.] A response was filed on August 24, 2020. [("Response"), Doc. No. 45]. No reply was filed by the movant, and the time to do so has lapsed.

**BACKGROUND**

Plaintiff, a Contract Administrator for the Colorado Department of Corrections ("CDOC"), asserts that he was discriminated against, based on his national origin (Pakistan) and his religion (Islam), when he was demoted shortly after receiving a promotion and increase in salary. [("Complaint"), Doc. No. 1 at ¶¶ 11, 12.]

On or about March 9, 2018, Plaintiff received a promotion to Contract Administrator V. [*Id*. at ¶ 24.] Eventually, however, after receiving several unsatisfactory evaluations in his new

position, Plaintiff was placed on a performance improvement plan, and he eventually lost his promotion along with its attendant increase in pay. [*Id*. at ¶¶ 31, 38, 40, 39.] Defendant asserts that Plaintiff was on probation for a period following his promotion, and was ultimately demoted because of performance deficiencies in the areas of accountability, job knowledge, communication, interpersonal skills, and customer service. Defendant claims that Plaintiff made errors in contracts, and did not follow fiscal policy, among other failings. [*See* Scheduling Order, Doc. No. 17 at 5, Defendant's Statement.]

Over the course of the year following his demotion, Plaintiff filed both internal grievances about alleged discrimination against him and complaints with the EEOC. [Compl. ¶¶ 41, 45, 52.] On October 15, 2019, approximately one year after his demotion, Plaintiff filed this lawsuit.

### *The Fears Memos*

At issue in this motion are certain reports in the form of memoranda prepared by Thomas Fears ("Fears Memos"), which were undertaken subsequent to Mr. Fears' employment by the CDOC on October 23, 2018, approximately three months after Plaintiff was demoted. [Resp. 2.] Defendant states that Mr. Fears was hired to audit <u>all</u> CDOC contracts (not just those worked on by Plaintiff), to ensure that the Department was complying with "State Controller policies, statutes and fiscal rules and to help identify areas for improvement that could put the Department at risk." [*Id.* at 3.] Unfortunately, it was not until May 26, 2020, that both counsel in this case learned about the existence of the audit undertaken by Mr. Fears and the Fears Memos, during the deposition of one of Plaintiff's supervisors, Mary Ensminger. [Mot 3.] Not only was Ms. Ensminger aware that Mr. Fears had audited contracts worked on by Plaintiff, counsel later

learned of two CDOC employees, Deb Goheen and Holly Hammel, who were also part of Plaintiff's chain of command, and were also aware of the Fears Memos.[1] And, in fact, Plaintiff testified, during his own deposition, that he himself was also aware of Mr. Fears' audit. [Resp. 4, 7.]

When Plaintiff's counsel learned about the Fears audit and the existence of the Fears Memos, immediate discovery was requested. The CDOC produced the Fears Memos, which critiqued Plaintiff's contracts in a 1500-page production, on June 2, 2020, one week after counsel had been surprised by the existence of the audit and memos. One week later, the CDOC produced an additional 2,660 pages of Fears Memos, critiquing the work of other employees, as well. At that time, there was still two months left in the discovery period.

As a result of the newly acquired information about Fears and the audit, Plaintiff sought to, and did, reconvene the depositions of Mss. Hammel and Goheen with no objection from Defendant, and questioned these employees about "why Fears was hired, what his scope of work was, how his memos were handled, what the memos were used for, and specific questions about his analysis of each contract he critiqued."[2] [*Id*. at 4; Resp. 4 n.1.] Mr. Fears was made available for deposition; however, Plaintiff chose not to depose him, even though there was ample time to do so. [Resp. 5.]

---

[1] Apparently, the Fears Memos are helpful to Defendant's position that Plaintiff was demoted because of poor performance in the job, not as a result of discriminatory practices. Ms. Ensminger, in first alerting both opposing counsel about the Fears Memos, "testified that Mr. Fears' audit validated her concerns about Mr. Shafi's unsatisfactory performance." [Resp. 3.]

[2] A reconvened deposition for Ms. Ensminger was scheduled, again with no objection from Defendant; however, Plaintiff chose not to go forward with that deposition.

## ANALYSIS

Given Defendant's position—that Plaintiff's demotion was based on his poor work performance, rather than on alleged discrimination—Mr. Fears is, undoubtedly, an "individual likely to have discoverable information . . . that [Defendant] may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). Had the attorneys known about Mr. Fears, the Rules would have required disclosure of his existence under subsection (i), and disclosure of his reports regarding contracts associated with Plaintiff under subsection (ii). At the time when Rule 26(a) disclosures were first made, however, Defendant's counsel was unaware of Mr. Fears' existence. The defense was, therefore, obviously not contemplating that Mr. Fears would be a witness in the case. Under the Rule, Defendant was not going to use Mr. Fears, or his reports on deficient contracts, "to support its claims or defenses." *See Poitra v. Sch. Dist. No. 1*, 311 F.R.D. 659, 663 (D. Colo. 2015).

The purpose of "discovery" is to learn about the information which might affect a case. As the Supreme Court stated long ago in *Hickman v. Taylor*, 329 U.S. 495 (1947):

> [T]he deposition-discovery rules are to be accorded a broad and liberal treatment. . . . Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise.

*Id.* at 507; *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (Discovery, itself, is "designed to help define and clarify the issues," and recognizes that "a variety of fact-oriented issues may arise during litigation[.]")

Discovery principals, laid out in *Hickman* and in other cases over the following seventy years, apply equally to all sides of litigation. In this case, Defendant's key witnesses knew about

Mr. Fears and his audits, as well as his critiquing memos at the time the audit was being performed, as did Plaintiff himself. However, neither attorney knew about the Fears audit, which began months after Plaintiff was demoted. Nor had either attorney seen the reports, or had the ability to assess them for evidentiary use in this case.

Even where there are discovery violations, sanctions should not be imposed under Federal Rule of Civil Procedure 37(c)(1), where a failure to disclose was substantially justified. For purposes of Rule 37(c)(1), a party's failure to disclose is substantially justified, where the non-moving party has a reasonable basis in law and fact, and where there exists a genuine dispute concerning compliance. *See Poitra* 311 F.R.D. at 668.

The court sees no discovery violation in this case, and therefore, no behavior subject to sanction. Neither Plaintiff himself, nor the CDOC supervisors still employed by the CDOC, apparently considered that a CDOC-wide contract audit, which happened months <u>after</u> the adverse actions in this case, might have evidentiary significance, and might be something about which they should inform their counsel. There is no allegation that the Fears Memos were relied upon in any way in justification of a decision to demote Plaintiff; in fact, the Fear Memos could not have had any role in Plaintiff's demotion decision, since they were not in existence at the time.

Importantly, both counsel learned about Mr. Fears and the Fears Memos at the same time, during a deposition of a witness where they both were in attendance. Discovery about Fears and the audit was immediately requested by Plaintiff, and within a week, all of the Fears Memos concerning errors or problems with any contract involving Plaintiff had been provided. Within one more week, all other Fears Memos critical of contracts involving other employees had been

5

provided. There was still ample time left in the discovery period for both sides to obtain additional information about the heretofore unknown audit, Mr. Fears himself, and the contents of his critiques. No party requested more time to explore the newly discovered information. Failure to learn of Mr. Fears and his audit at the beginning of the discovery did not, in any way, foreclose Plaintiff from full discovery into and about the individual contract audits. Without opposition, Plaintiff was permitted to reopen all depositions of witnesses who might have knowledge about Mr. Fears and his audit, and Mr. Fears was made available for deposition, if Plaintiff wanted to depose him. It was Plaintiff's choice not to do so.

Having found no sanctionable discovery violation, it is

**ORDERED** that "Plaintiff's Motion to Exclude or in the Alternative for Costs" [Doc. No. 33] is **DENIED**.

Dated September 25, 2020.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge

6