IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-02932-CMA

MANSOOR SHAFI,

    Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

    Defendant.

## ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. # 47). For the following reasons, the Motion is granted with respect to Claims 2, 4, and 5 in the Complaint; the Motion is denied with respect to Claims 1 and 3.

### I.  BACKGROUND

This is an employment discrimination case. Plaintiff, Mansoor Shafi, works as a Contract Administrator for the Colorado Department of Corrections (CDOC). (Doc. # 19, ¶ 15). After being hired as a Contract Administrator III in June 2016, he was promoted to Contract Administrator V in March 2018. (Doc. # 19, ¶¶ 19, 28). His promotion was subject to a six-month trial period. (Doc. # 47, ¶ 6). Following his promotion, Shafi received negative performance evaluations from his supervisors, and he was ultimately demoted back to his prior position. (Doc. # 19, ¶¶ 32, 37, 42). Shafi now contends that his demotion was the product of unlawful discrimination. (Doc. # 19).

Shafi claims that he received consistently positive performance evaluations during his first two years at CDOC. (Doc. # 19, ¶¶ 25-32). In mid-May 2018, however, Shafi's then-supervisor, Elizabeth Kennedy, allegedly saw him praying at work. (Doc. # 19, ¶ 33). Shafi, who describes himself as "a practicing Middle Eastern Muslim," (doc. # 19, ¶ 79) claims that Kennedy became "visibly upset" after seeing him pray. (Doc. # 19, ¶ 33). The next month, Shafi began receiving negative performance evaluations. (Doc. # 19, ¶ 34). On August 22, 2018, Shafi was demoted (Doc. # 19, ¶ 42).

Shafi now alleges that his "race/national origin/religion, as a practicing Middle Eastern Muslim, was a motivating factor" in his demotion. (Doc. # 19, ¶ 79). He also contends that when he reported the alleged discrimination to his superiors, they retaliated by issuing additional negative evaluations and limiting his work responsibilities. (Doc. # 19, ¶¶ 90-108). He is suing CDOC, alleging discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964.

CDOC counters that Shafi's demotion was motivated by performance-related concerns. (Doc. # 47, pp. 3-8). CDOC argues that these concerns were well-documented, and that Shafi never complained of discrimination before he began receiving negative performance evaluations. (Doc. # 47, ¶ 13). CDOC also points out that Kennedy, the supervisor who allegedly saw Shafi praying, resigned shortly after the incident and did not participate in the decision to demote Shafi. (Doc. # 47, pp. 3-5). According to CDOC, the decision to demote Shafi was based on the fact that "five

different supervisors have concluded Plaintiff performs below standards in various areas." (Doc. # 47, p. 8).

CDOC now seeks summary judgment, arguing that Plaintiff's claims must fail as a matter of law. With respect to Plaintiff's claims of hostile work environment and two of his claims of retaliation, the Court agrees. With respect to Plaintiff's discrimination claim and his remaining retaliation claim, the Court concludes that there is a genuine dispute of material fact that precludes summary judgment.

## II.   LEGAL STANDARDS

### A.   SUMMARY JUDGMENT STANDARD

To succeed on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine dispute of material fact; and (2) the movant is entitled to judgment as a matter of law. F.R.C.P. 56(a). The movant need not disprove the other party's claims to meet this burden; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings at this stage; rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (citation omitted).

When reviewing motions for summary judgment, a court may not resolve issues of credibility, *Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1251 (10th Cir. 2013), and must view the evidence – including all reasonably drawn inferences – in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence, and "[u]nsubstantiated allegations carry no probative weight." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citations omitted).

Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* at 249.

### III.   ANALYSIS

**A.   DISCRIMINATION**

Shafi alleges that CDOC engaged in unlawful discrimination when it demoted him from Contract Administrator V to Contract Administrator III. (Doc. # 19, ¶¶ 74-82). A plaintiff alleging discrimination on the basis of race, national origin, or religion can prove his case either through either direct evidence (e.g. the defendant's statements admitting a discriminatory motive) or through indirect evidence. *Kendrick v. Penske Transp.*

4

*Serices, Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000). The parties agree that Shafi has offered no direct evidence of discrimination. Therefore, the Court must determine whether Shafi has presented sufficient indirect evidence of discrimination to survive summary judgment. *Id*. To do so, the Court must apply the three-part *McDonnell Douglas* test. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

Under *McDonnell Douglas*, the Court first asks whether the plaintiff has established a prima facie case of discrimination. *Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 747 (10th Cir. 1999). The plaintiff can do so by demonstrating that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. *EEOC v. PVNF, LLC,* 487 F.3d 790, 800 (10th Cir. 2007).

If the plaintiff meets this burden, "the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision." *Id*. Here, "[t]he relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City and County of Denver*, 365 F.3d 912, 924 (10th Cir. 2004) (quoting *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1318 (10th Cir. 1999), *abrogated on other grounds by National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002)).

If the defendant offers a legitimate reason for its decision, "the burden shifts back to [the] plaintiff to show a genuine issue of material fact as to whether [the] defendant's reason for the discharge is pretextual." *Id*. "Pretext can be shown by such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997). If the plaintiff meets this burden, his claim survives; if he does not, the claim is subject to summary judgment. *Id.*

    1.    <u>Prima Facie Case</u>

For purposes of this Motion, CDOC concedes that (1) Shafi is a member of a protected class; and (2) Shafi suffered an adverse employment action. (Doc. # 47, p. 10). The parties disagree, however, as to whether the circumstances give rise to an inference of discrimination. The Court concludes that they do.

Shafi has presented evidence that he received positive performance evaluations as a Contract Administrator III (Doc. # 53, pp. 8-11, 33-54); that he was qualified for the Contract Administrator V position (Doc. # 53, pp. 59-60); that he received a satisfactory performance evaluation in his first month as a Contract Administrator V (Doc. # 53, pp. 12-15, 55-58); that his supervisor saw him praying and became "upset" (Doc. 47-1, p. 38); that the same supervisor subsequently gave him his first negative performance evaluation (Doc. # 47-1, p. 69); and that this negative evaluation played a role in his demotion. These circumstances support an inference of discrimination.

    2.    <u>Non-Discriminatory Explanation</u>

The burden next shifts to CDOC to provide a legitimate, non-discriminatory reason for Shafi's demotion. The Court concludes that CDOC has done so.

CDOC points out that Shafi received multiple negative performance evaluations after his promotion. (Doc. # 47, p. 8). These negative evaluations provide specific, nondiscriminatory critiques of Shafi's performance as a Contract Administrator. Though one of these evaluations came from Kennedy, the others came from other CDOC employees and supervisors against whom Shafi has not levelled any direct accusations of discrimination. (*See, e.g.* Doc. # 47-1, pp. 88-92). Substandard performance is a legitimate, nondiscriminatory reason for demotion. Therefore, CDOC has met its burden under *McDonnell Douglas*, and the burden shifts back to Shafi to demonstrate that his negative performance evaluations were pretextual.

3.  Pretext

To show pretext, a party may point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citation omitted). "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment," *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988), and "a plaintiff's allegations alone will not defeat summary judgment," *Morgan*, 108 F.3d at 1324. Courts consider the totality of the circumstances when considering whether pretext exists. *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 885 (10th Cir. 2018). If the evidence as a whole reveals a "nondiscriminatory reason for the employer's decision, or

7

if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue," summary judgment is appropriate. *Reeves*, 530 U.S. at 148.

Shafi argues that CDOC's explanation for his demotion is implausible. Specifically, he contends that he received consistently positive performance evaluations for his work as a Contract Administrator III, and that until his supervisor saw him praying, his evaluations as a Contract Administrator V were also positive. (Doc. # 52, p. 8). He argues that it is far more likely that his supervisors' attitude toward him changed due to his religion than that his performance "suddenly cratered" in the months following his promotion. (Doc. # 52, p. 5).

CDOC counters that only one of Shafi's supervisors saw him praying, and she resigned from CDOC shortly thereafter. (Doc. # 47, p. 12). CDOC contends that there no evidence of discrimination by Shafi's subsequent supervisors, and that Shafi therefore cannot prove an essential element of his case. (Doc. # 47, p. 12).

The Court concludes that there is a genuine issue of material fact as to whether the stated reasons for Shafi's demotion were mere pretext.

This issue largely turns on credibility: the credibility of Shafi's accusations and the credibility of his supervisors' explanations. The Court cannot make credibility determinations at the summary judgment stage. *Hansen*, 706 F.3d at 1251. Further, at this stage, the Court must view the evidence – including all reasonably drawn inferences – in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. Applying these principles, the Court concludes that Shafi has presented sufficient

evidence of pretext to survive summary judgment with respect to his discrimination claim.

## B. HOSTILE WORK ENVIRONMENT

Shafi next contends that his demotion and negative performance evaluations were "unwelcome and offensive," and thus created "an abusive working environment." (Doc. # 19, ¶¶ 86-89). This claim fails as a matter of law.

To succeed on a claim of hostile work environment, the plaintiff must show that: (1) he is a member of a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment was based on the protected characteristic; and (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of the plaintiff's employment and created an abusive working environment. *Asebedo v. Kan. State Univ.*, 559 F. App'x 668, 670 (10th Cir. 2014). "Hostile work environment harassment arises when the alleged discriminatory conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'" *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987) (quoting 29 C.F.R. § 1604.11(a)(3) (1986)). "Isolated or trivial episodes of harassment are insufficient" to create a pervasively abusive environment, *Honeycutt v. Safeway, Inc.*, 475 F. Supp. 2d 1063, 1075 (D. Colo. 2007); rather, "there must be a steady barrage of opprobrious [discriminatory] comments," *Semsroth v. City of Wichita*, 304 F. App'x 707, 722 (10th Cir. 2008). "[A] [racially] objectionable environment must be both objectively and subjectively offensive . . . ." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). "Discourtesy or rudeness

should not be confused with racial harassment . . . [n]on racial statements, consisting of reprimands, belittling, or demeaning tones, negative comments, and even verbal insults are not actionable under Title VII." *Chung v. El Paso Cty./Colo. Springs Sch. Dist. #11*, 115 F. Supp. 3d 1242, 1256 (D. Colo. 2015), *aff'd sub nom. Chung v. El Paso Sch. Dist. #11*, 659 F. App'x 953 (10th Cir. 2016).

Shafi offers no evidence of racial or religious harassment that would support a hostile-work-environment claim. Although Shafi alleges that his performance evaluations have been unfair, he offers no evidence of "severe or pervasive harassment" *Asebedo.*, 559 F. App'x at 670, or "a steady barrage of opprobrious [discriminatory] comments." *Semsroth*, 304 F. App'x at 722. Indeed, when Shafi was asked at deposition to describe what negative treatment he had experienced at CDOC, he did not identify a single incident in which he was subject to harassment, hostility, or abuse; he merely argued that his performance evaluations had been unfair. (Doc. # 47-1, pp. 34-38). This is no sufficient to support a hostile-work-environment claim.

Shafi argues, however, that Kennedy once "came to his office and berated him" shortly after she saw him praying. (Doc. #52, p. 12). But Kennedy resigned almost immediately after this incident, and this isolated event does not establish the existence of a consistently hostile environment. *Honeycutt*, 475 F. Supp. 2d at 1075. Although Shafi contends that he was "criticized continuously" by his superiors even after Kennedy's departure, he cites no evidence to support this claim. (Doc. # 52, p. 13). Therefore, Shafi has failed to produce sufficient evidence to avoid summary judgment on this claim.

**C.     RETALIATION**

Finally, Shafi asserts three separate claims of retaliation. He alleges that (1) he was demoted in retaliation for complaining about Elizabeth Kennedy (Doc. # 14, ¶¶ 90-93 (Claim 3)); (2) some of his job duties were taken away after he filed a complaint with the EEOC (Doc. # 19, ¶¶ 94-102 (Claim 4)); and (3) more job duties were taken away and he was made to watch training videos after he filed a Charge of Discrimination in September 2019 (Doc. # 19, ¶¶ 103-08 (Claim 5)).

The parties agree that the *McDonnell Douglas* burden-shifting framework applies Shafi's retaliation claim. To establish a prima facie case of retaliation, Shafi must show that (1) he engaged in protected opposition to discrimination; (2) he subsequently suffered a materially adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007). For purposes of this motion, CDOC concedes that Shafi engaged in protected activity and suffered an adverse employment action.

   1.     Prima Facie Case

Shafi has pled a prima facie case of retaliation. He has alleged that each time he has complained about discrimination or unfair treatment, he has suffered an adverse employment action shortly thereafter. (Doc. # 19, ¶¶ 90-108). The fact that Shafi pairs each complaint with a subsequent, close-in-time adverse employment action, supports an inference of retaliation.

2. <u>Non-retaliatory reason</u>

Next, the Court finds that CDOC has offered a non-retaliatory reason for its conduct. As explained above, Shafi received multiple negative performance evaluations from five separate supervisors, both before and after his demotion. (Doc. # 47, p. 8). Each negative evaluation provides substantive, detailed, non-discriminatory reasons why Shafi's performance was inadequate, and why various interventions were necessary. (*See, e.g.* Doc. # 47-1, p. 84). Substandard performance is a legitimate, nondiscriminatory reason for the interventions mentioned in the Complaint, and CDOC has made a colorable case that those interventions were not retaliatory. Therefore, CDOC has met its burden under *McDonnell Douglas*, and the burden shifts back to Shafi to demonstrate that his negative performance evaluations were pretextual.

3. <u>Pretext</u>

With respect to his first claim of retaliation – that he was demoted in retaliation for complaining about Elizabeth Kennedy (Doc. # 19, ¶¶ 90-93) – Shafi has offered sufficient evidence to create a genuine factual dispute on the issue of pretext. He has provided evidence that his performance evaluations were consistently positive before the incident involving Kennedy; that CDOC did not follow its policies for conducting a discrimination investigation; and that the tenor of his subsequent evaluations changed after the Kennedy incident. (Doc. # 52, p. 11). This is sufficient to create a factual dispute on the issue of pretext.

With respect to his remaining two claims of retaliation, however, Shafi has failed to undermine CDOC's non-retaliatory explanations. Indeed, Shafi's Response to the

Motion for Summary Judgment doesn't even mention the other claims of retaliation. (Doc. # 52, pp. 17-20). Therefore, he has failed to meet his burden of production with respect to those two claims, and those claims must fail as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, CDOC's Motion for Summary Judgment (Doc. # 37) is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED with respect to Claims 2, 4 and 5 in the Complaint (Doc. # 19). The clerk is directed to enter judgment in favor of Defendant and against Plaintiff on those three claims. The Motion is DENIED with respect to Claims 1 and 3.

DATED:  April 13, 2021

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge